

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

JACK LAWRENCE, as Special )
Administrator of the Estate of )
JOHNNIE LAWRENCE, Deceased, )
                                                   )
             Plaintiff, )
                                )
                                )   No. 04 C 1876
v. )
                                )
BIOTRONIK, Inc., )
                                )
             Defendant, )
     and )
UNIVERSITY OF CHICAGO )
HOSPITALS, )
             Respondent in Recovery. )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Jack Lawrence's ("Lawrence") motion for attorney fees and costs under 28 U.S.C. § 1447(c). For the reasons stated below, we grant the Plaintiff's motion in part and deny the motion in part.

## BACKGROUND

Lawrence filed this seven-count suit against Defendant Biotronik, Inc.

1

("Biotronik") in the Circuit Court of Cook County, contending that the pacemaker distributed to Plaintiff's wife, Johnnie Lawrence, by Biotronik was a direct and proximate cause of Mrs. Lawrence's death. Lawrence's complaint alleged negligence, strict liability, and *res ipsa loquitor* claims under Illinois law. Lawrence also named the University of Chicago Hospitals as a respondent in recovery, but alleged no claims against the hospital. On March 11, 2004, Biotronik removed this case to the Northern District of Illinois pursuant to 28 U.S.C. § 1331 and § 1441.

Biotronik sought removal from state court on the theory that federal question jurisdiction was proper on the grounds that the Medical Devices Amendments of 1976 ("MDA"), 21 U.S.C. § 360c *et seq.*, preempted Lawrence's state law claims. On August 19, 2004, upon motion by the Plaintiff, this court remanded the case to state court.

## DISCUSSION

Lawrence argues that he is entitled to reimbursement for $20,583.00 in attorney fees and $1,056.57 in expenses that he incurred as a result of Biotronik's decision to remove the instant action. (Mot. 12). Biotronik argues that its decision to remove the action was "reasonable" and therefore the "court should exercise its discretion and deny" Biotronik's request for attorney fees and costs. (Ans. 4).

## I. Whether Removal Was Justified

Under 28 U.S.C. § 1447(c), ("Section 1447(c)") "[a]n order remanding [an improperly removed] case may require payment of costs and any actual expenses, including attorney fees, incurred as a result of removal." § 1447(c). According to the Seventh Circuit, Section 1447(c) "is *not* a sanctions rule, it is a fee-shifting statute, entitling the district court to make whole the victorious party." *Garbie v. Daimler Chrysler Corp.*, 211 F. 3d 407, 410 (7th Cir. 2000)(emphasis in original). This means that, although bad faith on the part of the removing party is a relevant factor in determining whether to award costs, a showing of bad faith is not required. *Id.* In sum, an improper removal by a defendant "complicates and extends litigation; the American Rule requires parties to bear their expenses in one set of courts, but when their adversary wrongfully drags them into a second judicial system the loser must expect to cover the incremental costs." *Id.*

In this case, Biotronik's removal action was "unjustified under settled law." *Id.* Biotronik's arguments for removal ran contrary to the well-pleaded complaint rule, under which the plaintiff is considered a "master of the complaint" who has the power to determine the forum court by alleging only state-law claims, as Lawrence did in this case. *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99 (1987). In general, a claim of preemption is an affirmative defense, which is not sufficient to find federal question jurisdiction. *Id.*

Biotronik also failed to establish that the complete preemption doctrine was

3

applicable in this case. The complete preemption doctrine is an "'independent corollary' to the well-pleaded complaint rule," *id.* at 393, under which a federal statute has "so completely preempted a particular area that no room remains for any state regulation and the complaint would be 'necessarily federal in character.'" *Bastien v. AT&T Wireless Services, Inc.*, 205 F.3d 983, 986 (7th Cir. 2000)(quoting *Metropolitan Life Ins. Co., v. Taylor*, 481 U.S. 58, 63-64 (1987)). In this case, Biotronik failed to offer any analysis explaining its contention that Congress intended to completely occupy the field with the MDA. In fact, the U.S. Supreme Court has held that the MDA does not preempt certain state law claims. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 501-02 (1996); *see also Mitchell v. Collagen Corp.*, 126 F.3d 902, 912 (7th Cir. 1997)(discussing which state claims are preempted by the MDA, and which are not). This means that the MDA does not completely preempt all state claims and, therefore, Biotronik's preemption arguments are affirmative defenses that did not confer federal question jurisdiction. Because of this lack of federal question jurisdiction on the face of the complaint, Lawrence's motion to remand was granted by this court.

## II. Contingency Fee Arrangement

Biotronik also objects to this motion on the grounds that it is improper to award attorney fees and costs in contingency fee cases, given the requirement in Section 1447(c) that only "actual expenses" be reimbursed. § 1447(c). The only

4

controlling authority that Biotronik cites on this point is *Wisconsin v. Hotline Industries, Inc.*, 236 F.3d 363 (7th Cir. 2000). *Hotline Industries*, however, in no way stands for this proposition. First, *Hotline Industries* involved an award of costs to the state of Wisconsin for work done by salaried attorneys. *Id.* at 364. *Hotline Industries* said nothing regarding contingency fees. Second, the court in *Hotline Industries* did uphold the grant of costs to the state, despite a remand to the lower court to "determine the actual amount of fees incurred." *Id.* at 368. Biotronik claimed in its answer that it is "well-established by applicable law" in this Circuit that contingency fees are not recoverable under Section 1447(c) (Ans. 4). However, the Seventh Circuit has expressly declined to decide this issue. *Tenner v. Zurek*, 168 F.3d 328, 330 n.3 (7th Cir. 1999); *see also Keesling v. Richman*, 2003 WL 1921812, at *2 (S.D. Ind. 2003)(awarding costs under Section 1447(c) in a contingency fee case, and recognizing that the reasons for awarding costs under the statute apply regardless of the type of attorney-fee agreement). Because of the foregoing, we find that Lawrence is entitled to recover appropriate attorney fees and costs.

### III. Amount of Costs and Attorney Fees

Lawrence has requested $20,583.00 in attorney fees and $1,056.57 in expenses incurred from the improper removal of this case to federal court, for a total of $21,639.57. Lawrence's claim includes 41.4 hours by the firm Stein Bogot, Ltd., billed at their typical rate of $395 an hour, and 9.4 hours by lead counsel Rick

Schoenfield ("Schoenfield"), billed at his typical hourly rate of $300, times a multiplier of 1.5 for the contingency risk, bringing the total hourly rate for Schoenfield to $450 for this case. Biotronik was given a chance to respond to the reasonableness of Lawrence's claims for fees but failed to make any objections to the requested amounts in their answer.

According to Section 1447(c), this court has the discretion to award attorney fees and costs for "actual expenses . . . incurred." § 1447(c). Therefore, it is this court's duty to ensure that the attorney fees and costs awarded to plaintiffs for wrongful removal are reasonable under prevailing market rates and are the costs actually incurred. *See Hotline Industries, Inc.*, 236 F.3d at 366. It is also this court's duty to make sure that plaintiffs are "made whole," *Rickels v. South Bend*, 33 F.3d 785, 787 (7th Cir. 1994), no more and no less. In the instant action, we grant Lawrence's motion for attorney fees and costs in part. We order Biotronik to pay the full $1,056.57 in expenses and the full $16,353 for the services of Stein Bogot, Ltd., which the court deems reasonable. However, we only order the defendant to pay $2,820 for the services of Schoenfield, at a rate of $300 an hour, without applying the proposed 1.5 multiplier for the risk. It is not the purpose of Section 1447(c) to penalize defendants or to give plaintiffs a windfall, but rather the statute intended to compensate plaintiffs in wrongful removal cases for their *actual* costs, i.e., to put them in the same position they were in before removal. Schoenfield's normal reasonable rates are $300 an hour. Therefore, we find that the reasonable attorney

fees for Mr. Schoenfield's services are $2,820, making Lawrence's recovery for attorney fees and costs a total of $20,229.57.

## CONCLUSION

Based on the foregoing analysis, we grant Lawrence's motion for attorney fees and costs in part, and deny in part. We grant Lawrence a total of $20,229.57, including $1,056.57 in expenses and $19,173 in attorney fees.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: September 20, 2005